FILED

2020 Jan-06  AM 10:39
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **MARY ABRAMS,** | ) |
| As the Personal Representative and | ) |
| Administrator of the | ) |
| **ESTATE OF RODERICK ABRAMS,** | ) |
| | ) |
| **Plaintiff** | ) |
| | ) |
| **v.** | ) |
| | ) |
| | ) |
| **JEFFERSON DUNN,  RUTH NAGLICH,**) | |
| **DEBORAH CROOK,  ANTHONY BROOKS,** | ) |
| **JEFF WILLIAMS, ED KERN, EDWARD** | ) |
| **ELLINGTON, KARLA JONES, GWENDOLYN**) | |
| **GIVENS, GARY MALONE, KEVIN WHITE,** | ) |
| **CARLA GRAHAM, C.O.BURNS,** | ) |
| **SGT.LUITZE, C.O. TAYLOR,** | ) |
| **C.O. THOMPKINS  all sued in** | ) |
| **their individual capacities,** | ) |
| **BARBARA COE and WEXFORD HEALTH** | ) |
| **SOURCES Inc., a Florida corporation** | ) |
| | ) |
| **DEFENDANTS** | ) |

*JURY TRIAL DEMANDED*

2:20-CV-11- JHE

## COMPLAINT

Plaintiff, Mary Abrams, files this civil rights and wrongful death action as the Administrator and Personal Representative of the Estate of Roderick Abrams, deceased. Plaintiff alleges the defendants were deliberately indifferent to Mr. Abrams health and safety and violated his right under the Fourteenth Amendment not to be deprived of his life without due process of law and his right under the Eight Amendment not to be subjected to cruel and unusual punishment. He further alleges wrongful death pursuant to Ala. Code §6-5-410.

## JURISDICTION AND VENUE

1.     Jurisdiction is proper in this Court pursuant to the Civil Rights Act, 42 U.S.C. § 1983 *et seq* and 28 U.S.C. § 1331 and 1343 and the Eighth and Fourteenth Amendments of the United States Constitution. Plaintiff further invokes this Court's supplemental jurisdiction provided for in 28 U.S.C. § 1367 to hear her wrongful death claim under Alabama common law.

2.     Venue is proper in this district as the events giving rise to plaintiff's complaint occurred in St. Clair County, Alabama in the Northern District of Alabama.

## PARTIES

3.     Plaintiff, Mary Abrams, was appointed Personal Representative of the Estate of Roderick Abrams, by the Probate Court of Jefferson County, Alabama. She is a resident of Jefferson County, Alabama in the Northern District of Alabama and is the decedent's mother.

4.     Defendant, Jefferson Dunn (Dunn), was at all times relevant the Commissioner of the Alabama Department of Corrections (ADOC). As such, he was ultimately responsible for ensuring that the health, safety, medical and emotional needs of inmates in ADOC's custody were protected. At all relevant times, he was acting in that capacity under color of state law. He is sued in his individual capacity.

5.     Defendant, Ruth Naglich (Naglich), was at all times relevant ADOC's Associate Commissioner responsible for health care in ADOC facilities. As such, her primary duties included insuring that the health, safety, medical and emotional needs of inmates in ADOC's custody were protected. At all relevant times, she was acting in that capacity under color of state law. She is sued in her individual capacity.

6.     Defendant, Deborah Crook (Crook), was at all times relevant ADOC's Director of

Mental Health Services. As such, her primary duties included insuring that inmates with mental health issues were properly cared for. A critical part of her duties was suicide prevention. At all relevant times, she was acting in that capacity under color of state law. She is sued in her individual capacity.

7.      Defendant, Anthony Brooks (Brooks), was at all times relevant one of the wardens at St. Clair Correctional Facility. As such, he had responsibility for the health, safety, medical and emotional needs of inmates in that institution, including Roderick Abrams (Abrams). At all relevant times, he was acting in that capacity under color of state law. He is sued in his individual capacity.

8.      Defendant, Gwendolyn Givens (Givens), was at all times relevant one of the wardens at St. Clair Correctional Facility. As such, she had responsibility for the health, safety, medical and emotional needs of inmates in that institution, including Abrams. At all relevant times, she was acting in that capacity under color of state law. She is sued in her individual capacity.

9.      Defendant, Karla Jones (Jones), was at all times relevant one of the wardens at St. Clair Correctional Facility. As such, she had responsibility for the health, safety, medical and emotional needs of inmates in that institution, including Abrams. At all relevant times, she was acting in that capacity under color of state law. She is sued in her individual capacity.

10.     Defendant Jeff Williams (Williams), was at all times relevant an ADOC Deputy Commissioner. Among his responsibilities was assuring inmates were properly assigned. In that capacity, he had directed that inmates not generally be released from suicide watch to segregation. At all relevant times, he was acting in that capacity under color of state law. He is sued in his individual capacity.

-3-

11.     Defendant, Ed Kern (Kern), was at all times relevant ADOC'S Psychiatry Director. As such, he was responsible for overseeing inmates' psychiatric care. At all relevant times, he was acting in that capacity under color of state law. He is sued in his individual capacity.

12.     Defendant, Edward Ellington (Ellington), was at all times relevant ADOC's regional Correctional Institutional Coordinator for the Northern portion of the State. At all times, he was acting in that capacity under color of state law. He is sued in his individual capacity.

13.     Defendant, Gary Malone (Malone), was at all times relevant an ADOC correctional officer and Captain at St. Clair Correctional Facility who had the authority to have Abrams returned to segregation. At all times, he was acting in that capacity under color of state law. He is sued in his individual capacity.

14.     Defendant, Kevin White (White), was at all times relevant an ADOC correctional officer and Captain at St. Clair Correctional Facility who had the authority to have Abrams returned to segregation. At all times, he was acting in that capacity under color of state law. He is sued in his individual capacity.

15.     Defendant, Carla Graham (Graham), was at all times relevant an ADOC correctional officer and Captain at St. Clair Correctional Facility who had the authority to have Abrams returned to segregation. At all times, she was acting in that capacity under color of state law. She is sued in her individual capacity.

16.     Defendant, Burns (first name unknown), was at all times an ADOC correctional officer at St. Clair Correctional Facility. At all times, he was acting in that capacity under color of state law. He is sued in his individual capacity.

17.     Defendant Taylor (first name unknown), was at all times an ADOC correctional

-4-

officer at St. Clair Correctional Facility. At all times, he was acting in that capacity under color of state law. He is sued in his individual capacity.

18. Defendant Thompkins (first name unknown), was at all times an ADOC correctional officer at St. Clair Correctional Facility. At all times, he was acting in that capacity under color of state law. He is sued in his individual capacity.

19. Defendant Luitze (first name unknown), was at all times an ADOC correctional officer and Sergeant, at St. Clair Correctional Facility. At all times, he was acting in that capacity under color of state law. He is sued in his individual capacity.

20. Defendant, Barbara Coe (Coe), was at all relevant times Wexford Health Sources' Program Director for Mental Health. In that capacity, as will be more fully explained in the next paragraph, she had overall responsibility on behalf of ADOC's health provider, to insure that the mental and emotional needs of inmates were properly seen to. She was not a state employee, but was acting on behalf of a private corporation. Thus, it is not necessary to address whether she is sued in her individual or "official" capacity. To the extent there is any question, she is sued in both capacities.

21. Defendant, Wexford Health Sources, Inc. (Wexford), was at all times, a private, for-profit Florida corporation that, among other services, contracts with prisons and jails to provide health care for inmates. At all relevant times, it was under contract with ADOC to provide such services to inmates in the Alabama prison system. It was contractually and duty-bound to provide proper and appropriate health care, including mental health care, to all inmates.

22. At all times material herein, Mr. Abrams was confined and under the supervision, and control of the ADOC and ADOC was therefore responsible for protecting his life, health and well-being.

-5-

## FACTS AND PRIOR DETERMINATION

23.     On May 4, 2019, Judge Myron Thompson entered a "Remedial Opinion" in the

case of *Braggs v. Dunn*, Middle District of Alabama case number 2:14-cv-601-MHT (Doc. 2525)

providing immediate relief for suicide prevention within the Alabama prison system. He noted as

background on pages 1-2 of the opinion that

> the court previously found that the Alabama Department of Corrections (ADOC)
> has failed to provide adequate mental-health care to inmates in its custody in
> violation of the Eighth Amendment to the United States Constitution. More
> recently, in the wake of 15 inmate suicides in a 15-month period, the plaintiffs
> asked for immediate suicide-prevention relief. For reasons that follow, the court
> concludes that these suicides, as well as other evidence in the record, show that
> ADOC continues to fail to provide adequate suicide-prevention measures and,
> thus, subjects inmates to a substantial risk of serious harm, including self-harm,
> continued pain and suffering, and suicide. The risk of suicide is so severe and
> imminent that the court must redress it immediately. Therefore, the court will
> grant the plaintiffs' motion for immediate relief by making permanent most
> provisions of an interim suicide-prevention agreement that the parties reached
> early in this litigation; by adopting, in large measure, the recommendations
> proposed by experts for both parties; and by requiring court monitoring that is
> limited to the immediate relief ordered here (citations omitted).

24.     Plaintiff's son, Roderick Abrams, was one of the inmates who was to have been

protected by the interim suicide prevention agreement referenced by Judge Thompson. He was

also one of the fifteen inmates who committed suicide because the agreement was not

implemented in any meaningful way. The fact the agreement was entered into and Judge

Thompson's finding that ADOC failed to implement it in any meaningful way demonstrates that

the ADOC supervisory defendants and Wexford and its employees were aware of their

obligations, knew of the risks to inmate safety caused by the failures the agreement was to

remedy, failed to take adequate action to correct those failures and were thus deliberately

indifferent to those risks. Further, their failures and deliberate indifference proximately caused

-6-

Abrams's suicide.

25.   In his opinion (pp. 21-25), Judge Thompson found the following facts regarding

Abrams's suicide:

On January 2, 2019, Roderick Abrams committed suicide the same day he was placed in segregation. Rampant suicide-prevention failures plagued his case, including failing to place him on suicide watch when he expressed suicidality, repeatedly failing to screen him for mental-health issues prior to placing him in segregation, failing to complete mental-health appointments, and failing to immediately initiate life-saving measures when he was found hanging in his cell.

Records indicate that Abrams was initially held in segregation between August 23 and December 4, 2018 . . . without receiving a segregation preplacement screening.

A nursing record from September 3 reported that Abrams had suicidal thoughts and had told people he was going to hang himself. . . Despite being suicidal, Abrams remained in segregation instead of being placed on suicide watch. . . and did not receive a suicide risk assessment at that point.

The segregation initial assessment conducted on September 4—several days after the seven-day timeframe in which it should have been completed – failed to mention that the day before, Abrams had told nursing staff that he was suicidal.

Records indicate that, while in segregation, Abrams did not have his scheduled mental-health appointments on November 20, 27, and 30, and December 4.

On approximately December 21, 2018 he was placed on suicide watch after stating he was suicidal. . . Apparently, he had gone to the infirmary to have stab wounds checked on, and then felt increased anxiety about returning to a particular prison block. . . A mental health progress note from December 26 also reported that he had safety concerns and wanted to change institutions because of a conflict he had with gang-affiliated inmates due to his sexuality. . . His record do not contain a single crisis treatment plan.

Abrams was released from suicide watch on December 26, 2018. . . and sometime between then and January 2, 2019, he was placed in segregation. . . The records indicate that he did not receive a segregation preplacement screening. . . nor did he receive a three-day follow-up after being discharged from suicide watch. . . (D)espite his stay on suicide watch, he was not placed on the mental health caseload.

The segregation duty post logs indicate that, during the week running up to his suicide, there were several times where there was an hour, or even two hours,

between security checks. . . even though ADOC policy requires security checks in segregation be conducted every 30 minutes.

On January 2, 2019, at approximately 7:00 p.m., more than an hour after the last security check, a correctional officer making a security check discovered Abrams hanging from a vent cover inside his cell. . . At 7:11 a.m. (sic), he was cut down and medical staff initiated CPR, according to one officer's report.

26.     Judge Thompson further noted that both plaintiffs' and defendants' experts stated that the emergency response time was inadequate to save lives, as eleven minutes from discovery to cut down is more than enough time for death to occur. Plaintiff therefore alleges that, in addition to all the other failures detailed, the time between discovery of Abrams hanging in his cell and cutting him down was likewise inadequate. Plaintiff alleges that Judge Thompson's finding that Abrams was not cut down for eleven minutes constitutes the minimum length of time it took for him to be cut down after he was discovered. She believes that the actual length may have been greater.

27.     Judge Thompson further noted that "ADOC's quality improvement report stated that there were no areas for improvement in mental-health treatment or institutional operation, and recommended no corrective actions," a finding unqualifiedly rejected by Judge Thompson.

28.     Plaintiff alleges that the facts as recounted by Judge Thompson accurately reflect what happened to Abrams and adopts his account regarding the facts of this case, with the possible exception that it may have taken more than eleven minutes from Abrams being discovered to his being cut down. This possible discrepancy is immaterial to any issue in this matter since Judge Thompson found eleven minutes to be too long.

29.     In addition, plaintiff alleges that defendants are precluded from disputing the facts as stated by Judge Thompson. Abrams was a member of the plaintiff class in *Bragg* and thus, if not a party, was in privity to the *Bragg* named plaintiffs. Defendants were likewise all

-8-

defendants, or in privity to the defendants, in *Bragg* and Judge Thompson's "Remedial Opinion" constituted an appealable order and was thus final for purposes of determining that defendants in this case are bound by its findings. Plaintiffs request that this Court take judicial notice of Judge Thompson's opinion and apply the facts found there to this matter.

30.     The supervisory defendants, Dunn, Naglich, Crook, Brooks, Givens, Jones, Williams, Kern, Ellington, Malone, Malone, White and Graham, were all responsible for insuring that the corrective actions agreed to in the interim suicide prevention agreement referenced in paragraphs 23 and 24, *supra*, were put into effect and complied with. The three wardens and two captains were specifically responsible for implementing the agreement at St. Clair Correctional Facility. The other supervisory ADOC officials and employees were responsible for implementing the agreement in all ADOC facilities, including St. Clair. Each, individually and collectively, failed to implement the agreement despite knowing of the dangers of not doing so and the imperative that it be implemented. Thus, each was deliberately indifferent to the known danger of suicide the agreement was to address and their deliberate indifference led to Abrams's suicide.

31.     Defendant Coe was the Wexford employee who was responsible for insuring the interim suicide prevention agreement was implemented. As a mental health professional, she was, or should have been, most acutely aware of the dangers inherent in not implementing the agreement and was deliberately indifferent to the welfare of ADOC inmates generally, and Abrams particularly, in failing to insure implementation of the agreement and her deliberate indifference led to Abrams's suicide.

32.     Wexford was contracted to provide health care, including mental health care, to ADOC inmates, including Abrams. It was a party to the *Bragg* case when the interim suicide

prevention agreement was entered into through the date of Abrams's death. It was therefore contractually obligated to implement the suicide prevention agreement. Its failure to do so led to Abrams's suicide and thereby violated his Eighth and Fourteenth Amendment rights.

33.     Defendants Burns and Taylor mocked and belittled Abrams after his being released from suicide watch and placed in segregation. They knew he had been on suicide watch and were therefore aware of, or should have been aware of, his fragile mental state. Their actions were objectively intended to cause Abrams, who was already vulnerable, increased pain and agitation. They were thus, at a minimum, deliberately indifferent to his needs and vulnerabilities and exacerbated them, increasing the dangers to Abrams caused by the failure to implement the interim suicide prevention agreement and leading to his suicide.

34.     Defendants Thompkins and Luitze discovered Abrams hanging in his cell and, as described in Judge Thompson's order, failed to cut him down for at least eleven minutes. They were thus deliberately indifferent to an obvious need to act quickly to save Abrams's life.

## COUNT ONE: VIOLATION OF CONSTITUTIONAL RIGHTS

35.     Plaintiff hereby incorporates by reference all other paragraphs of this Complaint as if fully set forth here and further alleges as follows.

36.     Defendants' failure to properly treat Abrams's mental health condition, their failure to implement the interim suicide prevention agreement and their actions as described above violated his Eighth Amendment right to be free from cruel and unusual punishment, made applicable to the states via the Fourteenth Amendment, as well as his Fourteenth Amendment right not to be deprived of his life without due process of law. Abrams was a convicted felon serving a penal sentence of incarceration, not death.

37.     Defendants, individually and collectively, were deliberately indifferent to Abrams's increasingly serious mental health deficits and failed to meet his needs. They failed to insure that a suicide prevention plan they had agreed to was implemented, directly leading to Abrams killing himself. As described above, they failed to adequately treat Abrams, exacerbated his condition and, indeed, delayed virtually all treatment until his demise.

38.     The supervisory ADOC defendants (captains and above) failed to properly train and/or supervise correctional officers, resulting in their failure to make timely security checks and failure to adequately and timely respond when Abrams was discovered hanging in his cell. Further by not implementing the interim suicide prevention agreement utterly failed in their obligations to the court in *Bragg*, to ADOC inmates generally, and to the fifteen inmates, including Abrams, who committed suicide after the agreement was entered into.

39.     The four other ADOC defendants acted with deliberate indifference, if not malice, towards Abrams and directly contributed to his death.

40.     Coe and Wexford, by not implementing the interim suicide prevention agreement utterly failed in their obligations to the court in *Bragg*, to ADOC inmates generally, and to the fifteen inmates, including Abrams, who committed suicide after the agreement was entered into.

41.     Defendants knew and chose to ignore that the inadequate mental health treatment and/or care provided (or, more accurately, not provided) to Abrams (along with all other inmates in ADOC's custody) created an excessive risk to his health and wellbeing. Defendants consciously disregarded such risks in violation of his Eighth and Fourteenth Amendment rights.

42.     As a result of the failure to provide Abrams appropriate and necessary mental health treatment, proper screening and medications, and by exacerbating his condition by mistreating him, he suffered severe mental anguish ultimately leading to his untimely and

-11-

avoidable death.

**WHEREFORE**, plaintiff demands such compensatory and punitive damages as a jury may award and, pursuant to 42 U.S.C. §1988, her costs and reasonable attorney fees.

## COUNT TWO – WRONGFUL DEATH

43.     Plaintiff hereby incorporates by reference paragraphs 1-42 of this complaint as if fully set forth here and further alleges as follows.

44.     Abrams is survived by his mother and two sisters who constitute his heirs under Alabama law.

45.     Abrams's death was proximately caused by the negligent, wanton and/or wrongful conduct of Defendants, individually and collectively in violation of Ala. Code §6-5-410(a).

**WHEREFORE**, Plaintiff demands such substantial punitive damages as a jury may

award, plus her costs.

_____ /s/ Richard A. Rice
Richard A. Rice
ASB8387I66R
The Rice Law Firm, LLC
420 20th Street North
Suite 2200
Birmingham, Alabama 35203
205-618-8733, ext. 101
881-391-7193 (fax)
rrice@rice-lawfirm.com

_____ /s/David Gespass
David Gespass
ASB2724S74D
GESPASS & JOHNSON
P.O. Box 550242
Birmingham, AL 35255-0242
205-323-5966
205-323-5990 (fax)
pass.gandjlaw@gmail.com
Attorneys for Plaintiff

***PLAINTIFF DEMANDS TRIAL BY JURY***